In the Matter of the DEATH OF
Carolyn K. WARD

**Fred Jones FORD, Petitioner,**

v.

**David WALKER, Administrator of the
Estate, Respondent.**

**No. 56700.**

Court of Appeals of Oklahoma,
Division No. 2.

Feb. 23, 1982.

Released for Publication by Order of Court
of Appeals March 26, 1982.

Marilyn Kay Schrameck, Ellis & Frates,
Oklahoma City, for petitioner.

William S. Murphy, Jr., Oklahoma City,
for respondent.

BRIGHTMIRE, Judge.

Challenged is an award of death benefits
to the heirs of the late Carolyn K. Ward,
former office manager for Fred Jones Ford.
Ford contends the award is without an adequate evidentiary foundation. We affirm.

I

The 42-year-old decedent had been employed by Ford as a cashier for several
years. She was a competent and trustworthy employee. In January, 1980, Ford promoted her to office manager. This job
gave her supervisory responsibility over
seven other employees and a computer system and placed on her various duties she
had not had before.

Carolyn Ward launched into her new job
with enthusiasm. To master the new situation she began to work long hours both in
the office and at home. With regard to the
unfamiliar computer system, for instance,
she obtained and studied a lengthy operational manual. It got so, according to
Ward's daughter, that the woman would
arrive home from work exhausted but
carrying office work which she would work
on until late at night. Eventually chronic
fatigue began to produce signs of mental
and emotional stress. The condition worsened on April 8, 1980, prompting her to see
her family physician, William W. Cook, M.
D. She returned to work but Friday afternoon, April 11, 1980, became extremely
tired and went to bed early. She worked
from 0800 to 1430 hours the next day during which time a rash broke out on her face,
hands and neck; she appeared swollen and
her skin had a bluish cast.

Monday, April 14, she developed a fever
and chills, became irrational and was hospitalized on the service of Cook. The physician noted on patient's chart that she had a
history of systemic lupus erythematosus [1]

1. This disease is not easily defined. In terms of
diagnostic manifestations it is a noninfectious

inflammation of skin and connective tissue
throughout the body accompanied by variable

dating back to 1976. Following a series of unproductive X-rays, brain scans, and diagnostic testing, the woman's condition continued to deteriorate unabated until she died about noon on April 28, 1980. An autopsy disclosed death was accompanied by numerous complications of disseminated lupus. A physician who studied the case, S. J. Polk, M.D., reported that while Ward's work did not cause the underlying disease, "it is very probable ... that the stress, effort and chronic fatigue incident to her work for several weeks prior to her death was an important factor in precipitating an acute exacerbation [and] systemic spread of the condition, [and] hastened, excited and accelerated" the employee's death.

The trial judge found that Carolyn Ward sustained a job-related accidental personal injury April 11, 1980, which led to her death 17 days later and awarded her three dependent children their entitlement under the Workers' Compensation Act.

## II

Ford launches its attack in the area of causation saying that the evidence does not sustain the court's finding that Ward's death resulted from a work-connected accident within the meaning of the act. The employer points to the testimony of a co-worker suggesting that Ward's work hours or habits did not change substantially after her promotion, thus proving there was no extraordinary work-related "strain or exertion" which could have precipitated her death as required in this type situation by decisional law according to *Farmers Cooperative Ass'n v. Madden*, Okl., 356 P.2d 741 (1960) and *Phillips Petroleum Co. v. Eaves*, 200 Okl. 21, 190 P.2d 462 (1948). Nor is

there, contends Ford, medical evidence showing any work-connected pathology as required in *Haynes v. Pryor High School*, Okl., 566 P.2d 852 (1976) and *Refrigerated Transport, Inc. v. Creek*, Okl., 590 P.2d 197 (1979).

The short answer to the first point is that the co-worker's testimony was in conflict with that of others as well as certain circumstances and the personal habits of the decedent. Hence, the trial judge was fully justified in resolving the evidentiary conflict in favor of claimant.

As to the second point we think the medical evidence satisfies the requirements of *Haynes* and *Creek*. The autopsy report described all kinds of pathological changes growing out of an accelerated spread of lupus—a latent disease of long standing—triggered by stress and strain experienced by Ward in the wake of the extraordinary effort she exerted following her promotion to office manager. The physicians saw a causal connection between the aggravated pre-existing disease, the job connected stress, and Carolyn Ward's death. The trial judge saw the same connection. And we see it too.

Award sustained.

BOYDSTON, P. J., and BACON, J., concur.

---

symptoms such as fever, weakness and fatigability, skin rash, pleurisy, anemia, etc. Dorland's Illustrated Medical Dictionary, 24th Edition. According to Dr. Polk the etiology is unknown but is thought to be a congenital protoplasm defect.