**LEE WAY MOTOR FREIGHT, INC., an Own Risk Insurer, Petitioner,**

**v.**

**Burl HARLOW and The Workers' Compensation Court, Respondents.**

No. 59397.

Court of Appeals of Oklahoma, Division No. 4.

April 26, 1983.

Released for Publication by Order of the Court of Appeals May 27, 1983.

Ben A. Goff, Oklahoma City, for petitioner.

Richard A. Bell, Norman, for respondents.

BRIGHTMIRE, Presiding Judge.

Claimant, a truck driver, sought workers' compensation for permanent partial disability he allegedly sustained as a result of a heart attack which accidentally occurred on the job while under stress and strain. The trial court found he did suffer such an accident and awarded him compensation for 20 percent permanent partial disability to the body. The court en banc affirmed and the employer seeks review here.

I

The first error raised by the employer is that the award was not supported by competent evidence. The argument is that to prove a work related heart injury claimant must present medical testimony or evidence that the heart incident resulted in either a "coronary occlusion, coronary thrombosis, or myocardial infarction." Cited for this conclusion are *Refrigerated Transport, Inc. v. Creek,* Okl., 590 P.2d 197 (1979), and *Bill Gover Ford Co. v. Roniger,* Okl., 426 P.2d 701 (1967). This is not a proper construction of these cases. *Roniger* says that disability or death due to coronary occlusion, coronary thrombosis or myocardial infarction is compensable if work related antecedent strain or exertion was a sole or contributory cause of the pathology. It does not say that heart injury must involve one of the three classes of pathological conditions to be compensable. Language does appear in *Creek* that suggests such a restriction exists but it refers to *Haynes v. Pryor High School,* Okl., 566 P.2d 852 (1976). *Haynes* makes the observation that "[d]ecisions supporting compensation awards for injury by heart attack are limited to injuries attributable to coronary occlusion, thrombosis, or myocardial infarction...." We read this as advising the reader that the heart attack cases reviewed by the court in which compensation was allowed involved one of the three mentioned pathological classifications. This interpretation makes the statement compatible with the rest of the opinion and harmonizes it with the result reached in *Creek.* For in the final analysis it is as was said in the *Creek* concurring opinion—to be compensable, a heart ailment must be shown to have resulted in some job connected pathological change. The primary thrust of *Haynes* is that chest pain unac-

companied by altered coronary pathology cannot be an accidental injury. It may, of course, be evidence of an injury, but such evidence must be supported by medical evidence of some type of causally connected pathology, such as, for example, aggravation of an arteriosclerotic condition, a traumatic aggravation as it was called in *Creek*.

So the question narrows to this—is there medical evidence of internal pathological changes secondary to the heart attack experienced by claimant on May 23, 1980?

■ We hold there is. One physician reported that in his opinion the claimant "did sustain severe injury to his heart on May 23, 1980 resulting in damage to his sinoauricular node for which he requires the presence of a permanent pacemaker. It is my further opinion," the physician continued, "that he has Class 3 Organic heart disease which causes him to have a partial permanent impairment of 60% to the whole man, this being within the AMA Guidelines." [1] In our opinion this medical testimony meets the criteria contemplated by *Haynes* necessary to establish an accidental heart injury.

## II

The second complaint of the employer is that it received no timely notice of the job related injury and was consequently prejudiced.

There is evidence that Harlow himself told the Dallas dispatcher of his cardiac pain shortly after the Chicago incident. He testified that while in the process of "dropping and hooking a trailer" he experienced a sharp pain in his chest and dizziness. He was not feeling well but he drove on to Dallas. In route his left arm became numb. Weak, dizzy, sweaty, and sick at his stomach, he managed to make it back to Oklahoma City where he saw a physician and was hospitalized. He heard his wife call his boss and report to him the incident including the details of what happened.

■ This evidence was sufficient to support the finding of adequate and timely notice.

## III

■ Finally the employer says Harlow's claim is barred by the one year statute of limitations. The argument is that the claimant's form 3 was filed May 1, 1981, alleging a heart injury on May 27, 1980, which turned out to be May 23, 1980, and that the employee also testified he suffered an earlier cardiac incident in February 1980 for which he received treatment.

This is true. But the evidence is that Harlow returned to work and worked about three weeks before the second attack. He did not seek compensation for any disability occurring before May 23, 1980, and the medical evidence offered by the claimant attributes the disability awarded to the consequences of the May 23, 1980, accident.

We can see no error in finding the claim was not barred by the statute of limitations.

Award sustained.

DeMIER and STUBBLEFIELD, JJ., concur.

1. A sino-atrial node is a microscopic collection of atypical cardiac muscle fibers at the junction of the superior vena cava and the atrium, and is also known as the heart's pacemaker. *Dorland's Illustrated Medical Dictionary*, 1391 (24th ed. 1965).